# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

ROBERT C. O'MALLEY,

      Plaintiff,

      v.                          Case No. 04-C-0032

JON E. LITSCHER,
KEVIN POTTER,
SUZANNE DeHAAN,
BECKY KOEHN,
BRIAN J. BOHLMANN, and
BARBARA SELDIN,

      Defendants.

## DECISION AND ORDER

The plaintiff, Robert C. O'Malley, who is confined at Oshkosh Correctional Institution, brought this pro se civil rights action pursuant to 42 U.S.C. § 1983. He is proceeding in forma pauperis on claims that being forcibly restrained, hydrated and nourished by prison officials after refusing to eat[1] for more than three weeks violated his rights under the First, Fourteenth, and Eighth Amendments, as well as the Religious Land Use and Institutionalized Persons Act (RLUIPA). See February 19 and May 27, 2004, Orders. Defendants Brian J. Bohlmann and Becky Koehn filed a motion for summary judgment. Defendants Jon E. Litscher, Kevin Potter, Suzanne DeHaan and Barbara Seldin filed a motion to dismiss and motion for summary judgment. The plaintiff opposes the defendants' motions.

---

[1] The parties do not dispute that the plaintiff refused to eat for approximately 26 days prior to the events giving rise to the plaintiff's complaint. The plaintiff describes his refusal to eat as a religious fast. (Affidavit of Robert C. O'Malley Filed October 15, 2004 [O'Malley Aff.] ¶¶ 13-15). However, the defendants characterize the plaintiff's refusal to eat as a hunger strike. See e.g., Defendants Potter, Litscher, DeHaan and Seldin's Proposed Findings of Fact ¶ 5; Defendants Bohlmann and Koehn's Proposed Findings of Fact ¶¶ 4-6. For the purposes of this order, the court will refer to the plaintiff's actions as a refusal to eat.

Defendants Bohlmann and Koehn seek summary judgment on the plaintiff's Eighth Amendment claims. They assert that there is no evidence that the plaintiff suffered from a serious medical need, but rather that the undisputed evidence demonstrates that the plaintiff was afforded appropriate care. Defendants Bohlmann and Koehn also argue that there is no evidence that they were deliberately indifferent to the plaintiff's needs.

Defendants Litscher, Potter, DeHaan and Seldin contend that the plaintiff's Eighth Amendment claims against them should be dismissed as based on the complaint's failure to allege their personal involvement. Alternatively, these defendants seek summary judgment as to the plaintiff's Eighth Amendment claims, arguing that the plaintiff did not have an objectively serious medical need and that the defendants were not deliberately indifferent. In addition, defendants Litscher, Potter, DeHaan and Seldin argue that the plaintiff cannot establish a prima facie showing of First Amendment, RLUIPA or due process violations.

This order addresses the defendants' motions. In addition, the plaintiff's discovery-related requests, made in his responsive brief, are addressed herein.

## I.    **Standards of Review**

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted. See Fed. R. Civ. P. 12(b)(6). Dismissal of an action based on such a motion is warranted if the plaintiff can prove no set of facts in support of his claims that would entitle him to relief. Gen. Elec. Capital Corp. v. Lease Resolution Corp., 128 F.3d 1074, 1080 (7th Cir. 1997); see Conley v. Gibson, 355 U.S. 41, 45-46 (1957). The essence of a Rule 12(b)(6) motion is not that the plaintiff has pleaded insufficient facts, it is that even assuming all of his facts are accurate, he has no legal claim. Payton v. Rush-Presbyterian-St. Luke's Med. Ctr., 184 F.3d 623, 627 (7th Cir. 1999). The facts alleged in the complaint are assumed to be true and all facts, and all reasonable

inferences flowing from those facts, are read in the light most favorable to the plaintiff. Bethlehem Steel Corp. v. Bush, 918 F.2d 1323, 1326 (7th Cir. 1990). Facts alleged in a brief in opposition to a motion to dismiss, as well as factual allegations contained in other court filings of a pro se plaintiff, may be considered when evaluating the sufficiency of a complaint, so long as they are consistent with the allegations of the complaint. Gutierrez v. Peters, 111 F.3d 1364, 1367 n.2 (7th Cir. 1997).

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); see also Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986); McNeal v. Macht, 763 F. Supp. 1458, 1460-61 (E.D. Wis. 1991).  "Material facts" are those facts that, under the applicable substantive law, "might affect the outcome of the suit."  See Anderson, 477 U.S. at 248.  A dispute over "material facts" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Id.

The burden of showing the needlessness of a trial – (1) the absence of a genuine issue of material fact and (2) an entitlement to judgment as a matter of law – is upon the movant. In determining whether a genuine issue of material fact exists, the court must consider the evidence in the light most favorable to the nonmoving party.  See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  Therefore, all inferences are taken in the light most favorable to the nonmoving party.  Matter of Wade, 969 F.2d 241, 245 (7th Cir. 1992).

## II.    **Relevant Undisputed Facts**[2]

The plaintiff was incarcerated at the Redgranite Correctional Institution (RGCI) from March 8 through October 9, 2002.  (Affidavit of Robert O'Malley [O'Malley Aff.] ¶ 2).  At the times relevant to this complaint, defendant Brian J. Bohlmann, M.D., was employed by Prison Health Services, Inc. (PHS), as a physician at RGCI involved with assessing and treating the medical needs of the inmates.  (Affidavit of Brian J. Bohlmann, M.D., In Support of Motion for Summary Judgment [Bohlmann Aff.] at ¶ 2).  PHS is a private entity that provided health services at RGCI pursuant to a contract with the Wisconsin Department of Corrections (DOC).  (Bohlmann Aff. ¶ 2).  Defendant Becky Koehn is a registered nurse, who was formerly employed by PHS as the Health Services Administrator.  (Affidavit of Rebecca L. Koehn, R.N. In Support of Motion for Summary Judgment [Koehn Aff.] at ¶ 1).

Defendant Kevin Potter is chief legal counsel for the DOC.  (Affidavit of Kevin Potter [Potter Aff.] ¶ 1).  Defendant Barbara Seldin is employed by the DOC and works at RGCI as a psychologist.  (Affidavit of Barbara Seldin [Seldin Aff.] ¶ 1.  Defendant Suzanne DeHaan is Deputy Warden of RGCI.  (Complaint ¶ II).  Defendant Jon E. Litscher was the Secretary of the DOC at the times relevant to the complaint.  (Complaint ¶ II).

On or before April 11, 2002, the plaintiff began refusing to eat.  (Affidavit of Douglas S. Knott In Support of Motion for Summary Judgment [Knott Aff.] ¶ 16, Exh. O; Koehn Aff. ¶ 2).  The plaintiff wrote to the RGCI chaplain to inform him of his "religious fast."  (O'Malley Aff. ¶ 13).  On April 9, 2002, the plaintiff informed a nurse that he would be fasting, that he had experience with fasting, and that he would drink plenty of water.  (O'Malley Aff. ¶ 13).

---

[2]  The facts are taken from the sworn complaint, the plaintiff's October 15, 2004, affidavit, and the affidavits of defendants Bohlmann, Koehn, Potter, and Seldin.  Facts are also drawn from the affidavit of Douglas S. Knott, counsel for defendants Bohlmann and Koehn, and from the affidavit of non-defendant Correctional Officer Michael S. Reigh.

The plaintiff avers that he has been a born-again Christian since 1976, and a dutifully practicing Christian since 1984. (O'Malley Aff. ¶ 9). He regularly attends worship services and participates in Bible studies. (O'Malley Aff. ¶ 9). By denomination, the plaintiff is "of the Morovian church." (O'Malley Aff. ¶ 9). The plaintiff avers that he believes "[w]holeheartedly . . . in the power of prayer and fasting and within the practical Will of God." (O'Malley Aff. ¶ 10). Believing he was falsely accused, the plaintiff avers he "turned to [his] faith for Hope and with that hope to finally obtain justice in [his] case and by the revelation of the truth." (O'Malley Aff. ¶¶ 5, 10). The plaintiff avers that he envisioned "one, or both, of the complainants coming forward, confessing the truth of [his] innocence to these charges . . . the truth revealed before the court, being exonerated and ultimately, after 13 years in prison, receiving justice and freedom." (O'Malley Aff. ¶ 13).

The plaintiff had previously engaged in religious fasts. (O'Malley Aff. ¶ 10). His first fast occurred at the Wisconsin Resource Center in 1991 and lasted 30 days. (O'Malley Aff. ¶ 10). His second fast occurred at Columbia Correctional Institution in 1992 and lasted 28 days. (O'Malley Aff. ¶ 11). A third fast in 1993 lasted 17 days. (O'Malley Aff. ¶ 11).

The DOC has a hunger strike protocol. The protocol was utilized to ensure that the plaintiff's condition was monitored and that he was not in danger of serious physical harm. (Koehn Aff. ¶ 2; see also Knott Aff. ¶ 16, Exh. O). For approximately 26 days, the plaintiff refused all nourishment and ingested only water and salt packets. (Bohlmann Aff. ¶ 3).

On May 2, 2002, the plaintiff was feeling a little weak and a little light-headed when he stood up. (O'Malley Aff. ¶ 20). On the evening of May 2, 2002, the plaintiff reported feeling a "little weak but okay" to a nurse. (O'Malley Aff. ¶ 21). The nurse took the plaintiff's vital signs in recumbent and standing positions. (O'Malley Aff. ¶ 21). At 6:30 a.m. on the morning of May 3, 2002, the plaintiff reported to a nurse that he was feeling "a little weak," but

otherwise "feeling pretty good. Just a few of the normal aches and pains." (O'Malley Aff. ¶ 22).

Dr. Bohlmann avers he examined the plaintiff on May 3, 2002, at approximately 9:00 a.m. (Bohlmann Aff. ¶ 4). The plaintiff avers that defendant Bohlmann visited his cell and spoke to him, but did not examine him at any time on May 3, 2002. (O'Malley Aff. ¶ 23). Defendant Bohlmann noted that the plaintiff's weight had dropped from 200 to 174 pounds while refusing to eat. (Bohlmann Aff. ¶ 4). The plaintiff had only intermittently allowed RGCI staff to assess him and monitor his vital signs. The plaintiff stated that he was "weak and cold." (Bohlmann Aff. ¶ 4). Defendant Bohlmann found it necessary to assist the plaintiff in standing up and walking any distance. (Bohlmann Aff. ¶ 4). In addition, the plaintiff's heart rate had recently increased. (Bohlmann Aff. ¶ 4). The increase in heart rate, as well as the weakness exhibited by the plaintiff, indicated to defendant Bohlmann that the plaintiff was suffering from advanced stages of dehydration. (Bohlmann Aff. ¶ 4).

Defendant Potter was informed by defendant Bohlmann that if the plaintiff did not receive medical treatment, including hydration and feeding within 48 hours, the plaintiff would be at risk of suffering serious physical harm. (Potter Aff. ¶ 7; Bohlmann Aff. ¶ 5). On May 3, 2002, defendant Potter petitioned the Waushara County Circuit Court:

> for an order authorizing any licensed physician, or person acting under his or her direction and control, to evaluate and provide [the plaintiff] any feeding or hydration or both, by force or otherwise, which in his or her medical judgment is advisable to prevent significant risk of serious harm or death to [the plaintiff].

(Knott Aff. ¶ 2, Exh. A; Potter Aff. ¶ 5). Defendant Potter avers that the "death of an inmate at a correctional institution under the circumstances [involved in the plaintiff's case] would jeopardize safety, security and good order of the institution." (Potter Aff. ¶ 8). In support of the petition, defendant Potter submitted an affidavit from defendant Bohlmann, containing

averments as to the seriousness of the plaintiff's medical condition at the time. (Potter Aff. ¶ 9; Knott Aff. ¶ 4, Exh. C).

The plaintiff avers that, although defendants Seldin, Bohlmann and Potter were involved in preparing the petition and supporting materials, he was not informed about the process. (O'Malley Aff. ¶ 47). The plaintiff further avers that he was not allowed to attend the hearing or have someone appear on his behalf. (O'Malley Aff. ¶ 47).

On May 3, 2002, at 3:00 p.m., Waushara County Circuit Court Judge Lewis Murach held an emergency ex parte hearing on the petition filed by defendant Potter because of the seriousness of the plaintiff's health risk. (Potter Aff. ¶ 10). Judge Murach signed a five-day ex parte order, which provided that:

> any licensed physician, or a person acting under his or her direction and control, may evaluate and provide to [the plaintiff] any feeding or hydration or both, by force or otherwise, which in his or her medical judgment is advisable to prevent significant risk of serious damage or death to [the plaintiff].

(Knott Aff. ¶ 3, Exh. B).

Defendant Potter notified the administration at RGCI and defendant Bohlmann that the order had been signed and that he would provide a copy of the order by facsimile and by mail. (Potter Aff. ¶ 12). Defendant Potter advised the RGCI administration and defendant Bohlmann that, in the meantime, they were authorized to immediately start treatment. (Potter Aff. ¶ 12).

Upon receipt of the May 3, 2002, order, defendant Bohlmann directed that the plaintiff be administered intravenous hydration. (Bohlmann Aff. ¶ 7). This was to be accomplished by placing an intravenous line in a vein located in the plaintiff's upper extremity. (Bohlmann Aff. ¶ 7).

Defendant Seldin avers that the plaintiff was very concerned about being hydrated against his wishes. (Seldin Aff. ¶ 7). The plaintiff repeatedly asked Captain Chris Cooper to see the court order. (Seldin Aff. ¶ 7).

The plaintiff avers that he had earlier indicated he would try to pull out an intravenous line, but that he was never asked what he would do if the line were placed pursuant to a court order. (O'Malley Aff. ¶ 23). The plaintiff avers that he was not told about the existence of a court order until after he was restrained. (O'Malley Aff. ¶ 25). He then expressed a willingness to comply with the order. (O'Malley Aff. ¶ 28).

Placement of restraints on a prisoner may occur for a 12-hour period without the warden's approval, but approval is needed for longer periods. (Seldin Aff. ¶ 16). Based on defendant Bohlmann's recommendation that hydration of the plaintiff last for 24 hours, the warden's approval was obtained for keeping the plaintiff in restraints for up to 24 hours. (Seldin Aff. ¶ 16). The plaintiff avers that Warden Endicott did not approve the extended use of restraints until May 8, 2002, four days after the incident occurred. (O'Malley Aff. ¶ 56).

Defendant Seldin avers that the plaintiff was told in advance that the restraints would be in place for a full day in order to help him "anticipate, adjust, relax, and cooperate with the full medical procedure without incident (i.e. tearing out the IV's)." (Seldin Aff. ¶ 17). However, the plaintiff disputes that defendant Seldin or anyone else so informed him. (O'Malley Aff. ¶¶ 25, 28-29). It is undisputed that Captain Cooper told the plaintiff that he would be moved, restrained and that an intravenous line would be inserted. (O'Malley Aff. ¶ 25).

At approximately 8:15 p.m. on May 3, 2002, correctional officers moved the plaintiff to a medical observation cell and placed the plaintiff in five-point restraints. (Knott Aff. ¶ 11, Exh. J). The plaintiff initially refused to exit his cell and security officers prepared for a cell entry. (Seldin Aff. ¶ 9). The plaintiff avers that he was experiencing a Post Traumatic Stress

Disorder (PTSD) reaction due to his interactions with Lieutenant Cooper. (O'Malley Aff. ¶ 25). He removed an object from his mouth and scratched his lower arms multiple times. (Knott Aff. ¶ 12, Exh. K). Defendant Seldin avers that, per the Diagnostic and Statistical Manual of Mental Disorders – Fourth Edition, the plaintiff was not exhibiting signs or symptoms of PTSD due to his interaction with Captain Cooper. (Seldin Aff. ¶¶ 10-11). It is undisputed that the plaintiff eventually complied with correctional officers who escorted him to the observation cell where he was restrained. (Seldin Aff. ¶ 9).

Dr. Bohlmann participated in the effort to insert an intravenous line. (Bohlmann Aff. ¶ 7). According to defendant Bohlmann, the plaintiff strongly resisted placement of the line. (Bohlmann Aff. ¶ 7). At approximately 9:00 p.m., the first line was placed only after the plaintiff was restrained. (Bohlmann Aff. ¶¶ 7-8). Despite being restrained, the plaintiff was able to cause the first intravenous line to infiltrate, or dislodge from its correct location, requiring its removal after administration of only 125 cc of fluid. (Bohlmann Aff. ¶ 7). Another intravenous line was placed in the plaintiff's left forearm. (Bohlmann Aff. ¶ 7). According to the plaintiff, he did not shake or otherwise interfere with the first intravenous line in his left hand. (O'Malley Aff. ¶ 29).

A nurse placed a second line in the top of his right hand. (O'Malley Aff. ¶ 29). The plaintiff's right hand began hurting and swelling. (O'Malley Aff. ¶ 30). He became "really, really angry," and began trying to shake the tube out. (O'Malley Aff. ¶ 30). A line was then placed in the plaintiff's left mid-arm. (O'Malley Aff. ¶ 30). Defendant Bohlmann assessed the placement of this line and remained at the facility until 11:00 p.m. on May 3, 2002, to ensure that the line remained in place and that hydration was successful. (Bohlmann Aff. ¶ 8).

Around midnight, the plaintiff began to vomit a brown liquid. (Knott Aff. ¶¶ 8, 13, Exhs. G, L). Defendant Seldin was not present during this time. (Seldin Aff. ¶ 20). RGCI

Supervising Officer Michael S. Reigh, who is not a defendant in this action, was present during his work shift between 10:00 p.m. on May 3, and 6:00 a.m. on May 4, 2002. (Affidavit of Michael S. Reigh [Reigh Aff.] ¶¶ 1-4). Officer Reigh avers that he was present while the plaintiff was vomiting and that: "Officer staff continually cleaned [the plaintiff] off when he vomited," and that nurses regularly checked on the plaintiff. (Reigh Aff. ¶¶ 6-7). According to Officer Reigh, the plaintiff "did not lay in his vomit for three or four hours." (Reigh Aff. ¶ 7). Officer Reigh also states that marks that the plaintiff claims were caused by exposure to vomit are consistent with someone who has been physically resistive while in restraints. (Reigh Aff. ¶ 7). During his shift, Officer Reigh avers that the plaintiff's restraints were checked and approved by Health Services Unit staff and that marks on the plaintiff's wrists are consistent with a resistive subject. (Reigh Aff. ¶ 8).

According to the plaintiff, he was not resistive to restraint and Officer Reigh was not continuously present while he was vomiting. (O'Malley Aff. ¶¶ 32-35). The plaintiff avers that he was laying in vomit which was at no time cleaned off his back side from midnight to 6:45 a.m. (O'Malley Aff. ¶¶ 32-36). He further avers that he complained about back pain related to resting in vomit at 3:00 a.m. (O'Malley Aff. ¶ 19; Complaint at 3). The vomit on the plaintiff's back burned "more and more as time passed." (O'Malley Aff. ¶ 32). The plaintiff avers that he screamed for help. (O'Malley Aff. ¶ 34). He received Ibuprofen for pain at 11:40 a.m. ( O'Malley Aff. ¶ 19).

Nursing staff contacted defendant Bohlmann at 4:30 a.m. on May 4, 2002, to inform him that the plaintiff was asking to be released from the restraints. (Bohlmann Aff. ¶ 9). Defendant Bohlmann directed the staff to keep the plaintiff in restraints until defendant Bohlmann could assess him later in the morning and to continue the intravenous hydration. (Bohlmann Aff. ¶ 9). Defendant Bohlmann based his decision on several factors, including

his earlier observations of the plaintiff; his belief that the plaintiff would not keep the intravenous line in place if released from restraints; the fact that the plaintiff had only received hydration "for a few hours;" and his belief that the plaintiff continued to be medically unstable and, in defendant Bohlmann's medical judgment, at risk of serious harm if the hydration were not continued. (Bohlmann Aff. ¶ 9).

Defendant Bohlmann was also informed that the plaintiff had vomited. (Bohlmann Aff. ¶ 10). Defendant Bohlmann ordered that the plaintiff be given Maalox, the antacid Zantac, and Benadryl to suppress nausea. (Bohlmann Aff. ¶ 10). At approximately 6:35 a.m., the plaintiff's chest restraints were loosened to permit him to lean forward and have a nurse wash off his back, arms and face. (Knott Aff. ¶ 18, Exh. G; O'Malley Aff. ¶ 19). A nurse noted that the plaintiff had a "large amount of liquid vomitus on [his right] shoulder, back and arm." (Knott Aff. ¶ 18, Exh. G). Clean, dry towels were placed beneath the plaintiff. (Knott Aff. ¶ 18, Exh. G).

Defendant Bohlmann returned to RGCI at approximately 9:00 a.m. on May 4, 2002, and examined and assessed the plaintiff. (Bohlmann Aff. ¶ 11). He elected to continue the intravenous hydration so that the plaintiff would return to a stable condition. (Bohlmann Aff. ¶ 11).

During the afternoon of May 4, 2002, defendant Bohlmann determined that the plaintiff was medically stable and ready for release from the restraints. (Bohlmann Aff. ¶ 12). The plaintiff demonstrated his compliance prior to release by eating a cracker and drinking water. (Bohlmann Aff. ¶ 12). Defendant Bohlmann determined that intravenous hydration could be discontinued. (Bohlmann Aff. ¶ 12). The plaintiff's catheter was discontinued around 4:30 p.m. and he ate a more complete meal around 7:00 p.m. on May 4, 2002. (Knott Aff. ¶ 14, Exh. M). The plaintiff was given Maalox for stomach discomfort. (Knott Aff. ¶ 14, Exh. M).

The plaintiff was allowed to rinse off with water under a shower head before returning to his cell. (O'Malley Aff. ¶ 41).

After the plaintiff was released from restraints, defendant Bohlmann observed some irritation and discoloring of the skin on the plaintiff's lower back and coccyx area. (Bohlmann Aff. ¶ 13). Two abraded areas, each measuring approximately 1.5 centimeters by 2 centimeters, were noted on the plaintiff's lower coccyx as being scabbed over and without drainage or redness. (Knott Aff. ¶ 15, Exh. N). The plaintiff also had a 1.5 centimeter round abrasion on his right elbow similar in appearance to the others. (Knott Aff. ¶ 15, Exh. N). Each was treated with triple antibiotic ointment by a registered nurse. (Knott Aff. ¶ 15, Exh. N).

Defendant Bohlmann did not make a definitive conclusion about the cause of the irritation, but opined at the time that it could have been caused by the plaintiff's efforts to resist restraint while strapped to the bed, or by exposure to an acidic substance such as vomitus. (Bohlmann Aff. ¶ 13). Defendant Bohlmann did not observe serious abrasions or burns, but rather marks in the nature of a minor irritation or sunburn. (Bohlmann Aff. ¶ 13).

In defendant Potter's experience, an inmate on a hunger strike will cooperate after a judge signs an order such as the one signed by Judge Murach and that an inmate will not return to a hunger strike after intravenous hydration and feeding. (Potter Aff. ¶ 13). In the plaintiff's case however, after receiving hydration for 24 hours and beginning to eat voluntarily, the plaintiff again stopped eating within a few days. (Potter Aff. ¶ 14; O'Malley Aff. ¶ 53).

The plaintiff did not receive copies of defendant Potter's May 3, 2002, petition and supporting affidavits until May 6, 2002, after the forced feeding incident had occurred. (O'Malley Aff. ¶ 46). Captain Tarr, manager of the Segregation Housing Unit, who is not a defendant, and defendant DeHaan gave the plaintiff the materials. (O'Malley Aff. ¶ 46). The

plaintiff contacted defendant Litscher on May 12, 2002, to request an investigation of the incident. (O'Malley Aff. ¶ 56). Defendant Litscher initially assigned the investigation to Steve Casperson. (O'Malley Aff. ¶ 56). Warden Endicott then assigned the investigation to defendant DeHaan. (O'Malley Aff. ¶ 56).

Defendant Potter avers that on May 30, 2002, it was necessary for him to file a second petition requesting a permanent order to feed and/or to hydrate the plaintiff. (Potter Aff. ¶ 15; O'Malley Aff. ¶ 57). As is statutorily required, the plaintiff received five days' notice of the hearing, which was held on June 6, 2002. (Potter Aff. ¶ 15). The plaintiff attended the hearing by telephone. (Potter Aff. ¶ 16). The plaintiff avers that he was not in emotional or physical condition to represent himself. (O'Malley Aff. ¶ 58). Having begun another fast, the plaintiff's blood sugar levels were low the day before the hearing. (O'Malley Aff. ¶¶ 59-60).

Prior to the hearing, the plaintiff made repeated requests for counsel to Captain Tarr and Sarah Donovan, a crisis intervention worker at RGCI. (O'Malley Aff. ¶ 58). After consultation with defendant DeHaan, Ms. Donovan informed the plaintiff that his requests were denied. (O'Malley Aff. ¶ 58). The plaintiff then requested that Ms. Donovan act as his advocate. (O'Malley Aff. ¶ 58). On the morning of the hearing, this request was also denied. (O'Malley Aff. ¶ 58).

Officer Reigh was present during the telephone hearing on June 6, 2002. (Reigh Aff. ¶ 9). Also present were Captain Steinhart, Correctional Officer Gravunder, as well as defendants DeHaan, Bohlmann, and Koehn. (Reigh Aff. ¶ 9). Officer Reigh avers that he did not hear the plaintiff request counsel or request that Ms. Donovan attend the hearing. (Reigh Aff. ¶ 9). Judge Murach signed the permanent order on June 6, 2002. (Potter Aff. ¶ 17).

## III. **Plaintiff's Discovery-Related Requests**

The plaintiff's brief in opposition to the defendants' motions includes several discovery-related requests. Specifically, the plaintiff seeks a court order directing Lieutenant Cooper, Laura Fitzsimmons and Sarah Donovan, none of whom is a defendant in this action, to provide affidavits or depositions about certain matters. (Plaintiff's Response Brief in Opposition to All Defendant[s'] Motions for Summary Judgment and Motions to Dismiss [Plaintiff's Response Brief] at 7-8, 12-13, 15).

Pursuant to the court's May 4, 2004, scheduling order, discovery related to this action was to have been completed by August 4, 2004. The plaintiff was advised of the necessity of presenting admissible evidence to support and oppose summary judgment motions. See Court's Order of May 4, 2004. Further, the plaintiff was admonished that parties are expected to comply with court orders. Id.; see also Downs v. Westphal, 78 F.3d 1252, 1257 (7th Cir. 1996) ("pro se litigants are not entitled to a general dispensation from the rules of procedure or court-imposed deadlines"). The time for conducting discovery, as well as for seeking court assistance in navigating the discovery process, has long passed. Moreover, motions to compel discovery must comply with the requirements of Civil Local Rule 37.1 (E.D. Wis.). The plaintiff's requests fail to do so. The plaintiff has filed materials responsive to the defendants' motions which the court will consider. However, his discovery-related requests made in his brief in opposition to the defendants' motions will be denied.

## IV. **Rooker-Feldman Doctrine**

The plaintiff asserts a number of claims in his complaint. He maintains that he was denied medical treatment for skin injuries and pain and swelling in his hand in violation of his rights under the Eighth Amendment. The plaintiff claims that he was denied procedural due process under the Fourteenth Amendment based on the manner in which the court orders

permitting evaluation, hydration and feeding were obtained. The plaintiff also claims that his right to religious exercise was infringed upon in violation of the First Amendment and RLUIPA, both by the manner in which the court orders were obtained and by the manner in which he was restrained and hydrated. As part of his requested relief, the plaintiff seeks reversal of the state court's permanent order of June 6, 2002, permitting the feeding and/or hydrating of the plaintiff.

At the outset, the court notes that the Rooker-Feldman doctrine, deprives the district court of subject matter jurisdiction under certain circumstances. The Rooker-Feldman doctrine derives its name from two decisions of the United States Supreme Court, Rooker v. Fidelity Trust Co., 263 U.S. 413 (1923), and District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983). In Taylor v. Federal Nat'l. Mortg. Ass'n., 374 F.3d 529, 532 (7th Cir. 2004), the court explained:

> Simply put, the Rooker-Feldman doctrine "precludes lower federal court jurisdiction over claims seeking review of state court judgments ... [because] no matter how erroneous or unconstitutional the state court judgment may be, the Supreme Court of the United States is the only federal court that could have jurisdiction to review a state court judgment." Brokaw v. Weaver, 305 F.3d 660, 664 (7th Cir. 2002). Therefore, if a claim is barred by the Rooker-Feldman doctrine, the federal court lacks subject matter jurisdiction over the case. Id.

Because the Rooker-Feldman doctrine is jurisdictional in nature, "it may be raised at any time for the parties and by the court sua sponte." Lewis v. Anderson, 308 F.3d 768 (7th Cir. 2002).

The first inquiry in applying the Rooker-Feldman doctrine is whether the plaintiff is seeking to set aside the state court judgment or is asserting an independent claim. Taylor, 374 F.3d at 532. "Claims that directly seek to set aside a state court judgment are de facto appeals and are barred without additional inquiry." Id. In addition:

> federal claims presented to the district court that were not raised in state court or that do not on their face require review of a state court's decision may still be subject to Rooker-Feldman if those claims are "inextricably intertwined" with a

- 15 -

state court judgment. While "inextricably intertwined" is a somewhat metaphysical concept, the "crucial point is whether 'the district court is in essence being called upon to review the state-court decision.'" The determination hinges on whether the federal claim alleges that the injury was caused by the state court judgment, or, alternatively, whether the federal claim alleges an independent prior injury that the state court failed to remedy.

Id. at 532-533 (citations and footnote omitted).

In this case, the complaint seeks as requested relief that the court "reverse the current and pending Waushara County Circuit Court Order of June 6, 2002," which is the permanent order permitting evaluation and hydration and feeding of the plaintiff. (Complaint at 7). As a direct challenge to a state court order, the Rooker-Feldman doctrine deprives this court of subject matter jurisdiction to grant the relief requested.

The plaintiff's procedural due process and certain of his claims under the First Amendment and RLUIPA also implicate the Rooker-Feldman doctrine. The plaintiff asserts that defendants DeHaan and Potter denied him due process with regards to the two state court petitions and hearings which resulted in orders allowing for the forcible evaluation, hydration and feeding of the plaintiff. (Complaint at 4, 6; see also Plaintiff's Response Brief at 5-6, 14-15, 17). The plaintiff states that defendant Potter violated his rights under the First Amendment and RLUIPA by filing the petitions and failing to notify the plaintiff of the first hearing or first order. (Plaintiff's Response Brief at 17).

The plaintiff also asserts that defendant Bohlmann misled and misinformed the state court, thus causing the state court to err in granting the five-day order in contravention of the plaintiff's rights under RLUIPA and the First Amendment. (Plaintiff's Response Brief at 6, 16). The plaintiff contends that defendant Koehn contacted the Bureau of Health Services in Madison, Wisconsin, to initiate the process of obtaining a court order permitting hydration and

feeding in violation of his First Amendment and RLUIPA rights. (Plaintiff's Response Brief at 5).

It is clear that the plaintiff claims that had he received adequate procedural due process, or had defendants Bohlmann, Potter, Koehn and DeHaan not endeavored to secure the state court orders, the state court would not have entered the subject orders. The allegedly defective process received with regards to these hearings and orders are inextricably intertwined with the orders themselves. Thus, the court concludes that it lacks subject matter jurisdiction over the plaintiff's due process claims against defendants DeHaan and Potter. See Walker v. Horn, 385 F.3d 321, 328-332 (3rd Cir. 2004), cert. denied, ___ U.S. ____, 125 S.Ct. 1981 (2005) (dismissing for lack of subject matter jurisdiction prisoner plaintiff's procedural due process claims concerning prison officials' acquisition of court order permitting force feeding to end religious fast).

The plaintiff couches in First Amendment and RLUIPA terms his claims concerning defendant Bohlmann's alleged misleading and misinforming of the state court, defendant Koehn's initiation of the process to obtain a court order, and defendant Potter's filing of the petitions and alleged failure to inform the plaintiff of the court order. However, these claims are in essence, challenges to the process used to obtain the court orders. As such, they are claim inextricably intertwined with the state court judgment. Thus, the court lacks subject matter jurisdiction over the plaintiff's RLUIPA and First Amendment claims against defendants Potter and Koehn. The court also lacks subject matter jurisdiction over the plaintiff's RLUIPA and First Amendment claims relating to defendant Bohlmann's alleged misleading and misinforming of the state court. The dismissals will not bar the plaintiff from "litigation in a different judicial system that does have jurisdiction." Frederickson v. City of Lockport, 384 F.3d 437, 438-39 (7th Cir. 2004).

However, claims which lie outside the scope of the Rooker-Feldman doctrine may proceed, despite dismissal for lack of subject matter jurisdiction of other claims asserted in this action. See Frederickson, 384 F.3d at 439. Thus, the plaintiff may proceed on his Eighth Amendment claims.

It also appears that certain of the plaintiff's RLUIPA claims fall outside of the scope of the Rooker-Feldman doctrine. Specifically, the plaintiff claims that defendant Bohlmann violated his rights under RLUIPA by failing to stop the forced hydration procedure after the plaintiff promised to eat and by deciding to continue the procedure on the morning of May 4, 2002. (Plaintiff's Response Brief at 8, 11). The plaintiff claims that defendant Seldin had the authority to stop the procedure at either the outset or on the morning of May 4, 2002, but failed to do so, thus violating his rights under RLUIPA. (Plaintiff's Response Brief at 8, 11).

These allegations do not directly concern the validity of the state court judgment. Rather, the plaintiff is claiming that his religious exercise was impeded by defendant Bohlmann's decision to use and continue to use restraints and forcible hydration on him and defendant Seldin's failure to stop this procedure either at the outset or later on. The defendants acted pursuant to the state court order. However, the order was not mandatory but merely permitted the evaluation, feeding and rehydration of the plaintiff in the discretion of a licensed physician. The defendants' actions in failing to stop the rehydration procedure does not directly call into question the state court's decision. Although it is a close question, under the circumstances the court concludes that these claims are not inextricably intertwined with the state court order so as to be barred by the Rooker-Feldman doctrine. Accordingly, the court will next evaluate the defendants' motions as they relate to these claims.

**V.    Defendants Litscher, Potter, DeHaan and Seldin's Motion to Dismiss the Plaintiff's Eighth Amendment Claims**

Defendants Litscher, Potter, DeHaan and Seldin, whom the court will collectively refer to as the State defendants, argue that the complaint does not allege their "direct personal involvement . . . in the deprivation of [the plaintiff's] Eighth Amendment Rights and his complaint should be dismissed as a matter of law." (Brief in Support of Defendants' Motion to Dismiss and for Summary Judgment [State Defendants' Brief] at 7).

The plaintiff's allegations about defendant Litscher concern defendant Litscher's initiation, at the plaintiff's request, of an investigation of the events of May 3 and 4, 2002. (Complaint at 4). The plaintiff indicates in his responsive brief that he made this request on May 12, 2002. Thus, nothing suggests defendant Litscher's direct or indirect involvement in the use of restraints against the plaintiff, the forcible administration of hydration or nourishment, or the treatment of plaintiff's injuries.

The plaintiff asserts that defendant Litscher was deliberately indifferent by appointing defendant DeHaan, whom the plaintiff asserts was incapable of being impartial, to investigate the incident. However, according to the plaintiff, defendant Litscher assigned the investigation to Steve Casperson. The investigatory responsibility subsequently was delegated to Warden Endicott, who in turn assigned defendant DeHaan to the task. The plaintiff's only other assertion concerning defendant Litscher is that he acted with deliberate indifference in dismissing "all of O'Malley's Inmate Complaint Appeals." (Plaintiff's Response Brief at 17). The plaintiff was not permitted to proceed on such claim against defendant Litscher. See Court's Orders of February 19, 2004, and May 27, 2004.

The plaintiff fails to state an Eighth Amendment claim against defendant Litscher. In addition, the materials submitted by the plaintiff reveal that he states no other claims against defendant Litscher. Defendant Litscher, therefore, will be dismissed from this action.

The plaintiff maintains that defendant Potter failed to provide him with notice or the opportunity to be represented at the hearing on the first petition for an order permitting the force feeding of the plaintiff. The plaintiff further contends that defendant Potter failed to notify him of the existence of the first court order. As previously discussed, this court lacks subject matter jurisdiction over the plaintiff's due process claims.

The plaintiff also claims that defendant Potter's conduct violated his rights under the First Amendment, Fourteenth Amendment and RLUIPA. However, the plaintiff does not assert that defendant Potter had any direct personal involvement in the application of restraints against the plaintiff, the forcible administration of hydration or nourishment, or the treatment of plaintiff's injuries. Accordingly, the plaintiff fails to state any Eighth Amendment claims against defendant Potter and such claims will be dismissed.

The plaintiff asserts that defendant DeHaan refused to allow him to have representation at the June 6, 2002, hearing, in violation of his Fourteenth Amendment right to due process. Such claim implicates the Rooker-Feldman doctrine and must be dismissed for lack of subject matter jurisdiction. The plaintiff further contends that defendant DeHaan acted as an unimpartial investigator of the incidents of May 3 and 4, 2002. (Complaint at 4; Plaintiff's Response Brief at 14,17). The plaintiff's complaint contains no allegations of defendant DeHaan's direct personal involvement in the application of restraints against the plaintiff, the forcible administration of hydration or nourishment, or the treatment of plaintiff's injuries. Accordingly, the plaintiff fails to state any viable Eighth Amendment claims against defendant DeHaan. The plaintiff's claims against defendant DeHaan will be dismissed.

As the State defendants concede, the complaint alleges that restraint of the plaintiff occurred at the direction of, among others, defendant Seldin. (Defendants' Brief at 7; Complaint at 2). The plaintiff asserts that defendant Seldin had the authority to "stop the procedure" and to release him from restraints, but failed to do so in violation of his rights under the Eighth Amendment and RLUIPA. (Plaintiff's Response Brief at 16). Liability, absent direct responsibility for the improper action, may lie against a supervisor where there exists "a causal connection, or an affirmative link, between the misconduct complained of and the official sued." Wolf-Lillie v. Sondquist, 699 F.2d 864, 869 (7th Cir. 1983).

In moving to dismiss, the State defendants have failed to establish that such a link does not exist between defendant Seldin's conduct and the plaintiff's restraint. Accordingly, their motion to dismiss will be denied with respect to defendant Seldin.

## VI.    The Plaintiff's Remaining Eighth Amendment Claims Against Defendants Seldin, Koehn and Bohlmann

As detailed in section IV of this order, the only State defendant against whom the plaintiff's Eighth Amendment claims remain is defendant Seldin. She moves for summary judgment on these claims. In addition, defendants Koehn and Bohlmann, to whom the court will collectively refer as the PHS Defendants, move for summary judgment on the plaintiff's Eighth Amendment claims.

To establish liability under the Eighth Amendment, a prisoner must show: (1) that his medical need was objectively serious; and (2) that the official acted with deliberate indifference to the prisoner's health or safety. Farmer v. Brennan, 511 U.S. 825, 834 (1994); Chapman v. Keltner, 241 F.3d 842, 845 (7th Cir. 2001); see also Estelle v. Gamble, 429 U.S. 97, 104-05 (1976); Zentmyer v. Kendall County, Illinois, 220 F.3d 805, 810 (7th Cir. 2000).

A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Wynn v. Southward, 251 F.3d 588, 593 (7th Cir. 2001) (quoting Gutierrez, 111 F.3d at 1373). Factors that indicate a serious medical need include "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Gutierrez, 111 F.3d at 1373 (citations omitted). A medical condition need not be life-threatening to qualify as serious and to support a § 1983 claim, providing the denial of medical care could result in further significant injury or in the unnecessary infliction of pain. See Reed v. McBride, 178 F.3d 849, 852-53 (7th Cir. 1999); Gutierrez, 111 F.3d at 1371.

A prison official acts with deliberate indifference when "the official knows of and disregards an excessive risk to inmate health or safety." Farmer, 511 U.S. at 837. Prison officials act with deliberate indifference when they act "intentionally or in a criminally reckless manner." Tesch v. County of Green Lake, 157 F.3d 465, 474 (7th Cir. 1998). Neither negligence nor even gross negligence is a sufficient basis for liability. See Salazar v. City of Chicago, 940 F.2d 233, 238 (7th Cir. 1991). A finding of deliberate indifference requires evidence "that the official was aware of the risk and consciously disregarded it nonetheless." Chapman, 241 F.3d at 845 (citing Farmer, 511 U.S. at 840-42). Disagreement with medical professionals about treatment needs does not state a cognizable Eighth Amendment claim under the deliberate indifference standard set forth in Estelle, 429 U.S. 104-105. Ciarpaglini v. Saini, 352 F.3d 328, 331 (7th Cir. 2003).

In determining whether an official's conduct rises to the level of deliberate indifference, a court may not look at the alleged acts of denial in isolation; it "must examine the totality of

an inmate's medical care." Gutierrez, 111 F.3d at 1375. In Gutierrez, the court found that isolated incidents of delay, during ten months of prompt, extensive treatment did not amount to deliberate indifference. Id. Similarly, in Dunigan v. Winnebago County, 165 F.3d 587, 591 (7th Cir. 1999), "factual highlights" of neglect over a month and a half of otherwise unobjectionable treatment were insufficient to avoid summary judgment. Moreover, "an inmate who complains that delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to succeed." Langston v. Peters, 100 F.3d 1235, 1240 (7th Cir. 1996).

Not every "ache and pain or medically recognized condition involving some discomfort can support an Eighth Amendment claim." Gutierrez, 111 F.3d at 1372. "A prison's medical staff that refuses to dispense bromides for the sniffles or minor aches and pains or a tiny scratch or a mild headache or minor fatigue – the sorts of ailments for which many people who are not in prison do not seek medical attention – does not by its refusal violate the Constitution." Id. (quoting Cooper v. Casey, 97 F.3d 914, 916 (7th Cir. 1996); see also Gibson v. McEvers, 631 F.2d 95 (7th Cir. 1980) (failure to treat a common cold did not constitute deliberate indifference to a serious medical need); Snipes v. DeTella, 95 F.3d 586, 591 n.1 (7th Cir. 1996) (a toe whose toenail had been removed did not constitute a serious medical need, although no doubt painful); Oliver v. Deen, 77 F.3d 156 (7th Cir. 1996) (a mild case of asthma which was allegedly exacerbated by second-hand tobacco smoke did not rise to the level of seriousness sufficient to support a claim for relief).

### A.   Hydration and Feeding

The PHS Defendants argue that their administration of hydration and feeding to the plaintiff did not deny the plaintiff treatment for a serious medical need.  (PHS Defendants' Brief at 6-7).  Because the court does not construe the complaint or the plaintiff's submissions

consistent with the complaint as making such a claim for denial of medical treatment based on the hydration and feeding of the plaintiff, the PHS Defendants' argument on this point will not be addressed.[3]

### B.    Pain and Swelling of Right Hand

The plaintiff claims that the insertion of an intravenous needle into his right hand caused it to swell and caused him pain. (Complaint at 2; O'Malley Aff. ¶ 30). His medical records reflect that the hand was also discolored. See Knott Aff. ¶¶ 7, 13, Exhs. F, L. Even if substantial swelling and pain at the site of the insertion of a needle might cause a lay person to recognize the need for treatment, see Wynn, 251 F.3d at 593, the plaintiff does not specify that any of the defendants placed the intravenous line. He states that a "nurse" placed the injurious needle. (O'Malley Aff. ¶ 29). Further, the plaintiff does not contend that the injury was caused by an intentional act. Rather, he indicates that the "nurse" stated she had "missed the vein." (O'Malley Aff. ¶ 30). Even gross negligence fails to state a claim under § 1983. Salazar, 940 F.2d at 238.

Moreover, the undisputed facts do not reveal that the defendants were deliberately indifferent to the situation. The intravenous line was removed from the plaintiff's right hand and reinserted in a different location. (O'Malley Aff. ¶¶ 29-30). The attending nurse loosened the plaintiff's restraints and the plaintiff's medical records reflect that this alleviated some of the swelling. See Knott Aff. ¶¶ 7, 13, Exhs. F, L.

The plaintiff has not established deliberate indifference to his medical needs by any of the defendants. Therefore, the defendants will be granted summary judgment with respect

---

[3] Although it is not admissible evidence because the plaintiff lacks the medical expertise to assess the extent to which he was dehydrated or his health was otherwise impacted by his refusal to eat, notably, the plaintiff avers that he was not dehydrated. See e.g., Plaintiff's Response to Defendants Litscher, Potter, DeHaan and Seldin's Proposed Findings of Fact and Conclusions of Law at 1, Response to #7. Thus, it appears that the plaintiff does not allege a medical need or deliberate indifference with respect to treatment for dehydration.

to the plaintiff's medical care claim to the extent it concerns the pain and swelling in his right hand.

**C.    Skin Injuries**

The facts relevant to this claim reveal that the plaintiff began vomiting around midnight while he was restrained.  It is undisputed that neither defendant Seldin nor defendant Bohlmann were present at this time.  There is also no evidence that defendant Koehn was present during this period.

Although officer and nursing staff cleaned the plaintiff's front side, his back remained exposed to the vomit due to his restraint.  At 3:00 a.m., the plaintiff began complaining that his back was burning from the exposure to acidic vomit.  At 4:30 a.m., defendant Bohlmann, who was not at the RGCI, was notified by a nurse that the plaintiff was vomiting and requesting to be released from restraints.  Defendant Bohlmann prescribed antacid and anti-nausea medications.

The plaintiff contends that it may be inferred from the prescription of these medications that defendant Bohlmann knew about the plaintiff's complaints of burning in his throat and on his skin due to exposure to vomit.  (Plaintiff's Response to Defendants Bohlmann and Koehn's Proposed Findings of Fact and Conclusions of Law at 4, Response to # 17). Defendant Bohlmann believed that the plaintiff would interfere with his intravenous line if released from restraints.  Based on his earlier observation of the plaintiff, the limited amount of hydration the plaintiff had received at that stage and his conclusion that the plaintiff continued to be medically unstable and at risk of serious harm if hydration did not continue, defendant Bohlmann made a medical judgment that it was inappropriate to release the plaintiff from restraints at that time.

Approximately two hours later, at 6:35 a.m., the plaintiff's restraints were loosened to permit the cleaning of his back. Defendant Seldin returned to the area after the plaintiff's back had been cleaned of vomit. (O'Malley Aff.¶¶ 36-37). Defendant Bohlmann examined the plaintiff at 9:00 a.m. The plaintiff received Ibuprofen for his back pain at 11:40 a.m. After defendant Bohlmann determined it was medically appropriate to release the plaintiff from his restraints, the plaintiff was permitted to wash off with water.

Defendant Bohlmann then observed the skin injuries about which the plaintiff complains. Defendant Bohlmann opined that these might have been caused by scraping against the bed while resisting restraint or by exposure to vomit. The plaintiff denies scraping against the bed. Defendant Bohlmann characterized the injuries as minor, in the nature of a minor irritation or sunburn. The plaintiff characterizes the injuries as "PITS." (Plaintiff's Aff. ¶ 50). These areas were treated with triple antibiotic ointment by a nurse.

Notably, defendant Koehn is not alleged to have participated in denying the plaintiff treatment for his skin injuries. Moreover, the plaintiff has not established a connection between any conduct by defendant Koehn as a supervisor and the alleged denial of treatment of the plaintiff's skin injuries. It is also undisputed that defendant Seldin was not present while the plaintiff was vomiting and did not return until after the plaintiff's back had been cleaned. No basis for supervisory liability as against defendant Seldin has been established. Accordingly, there is no basis for the plaintiff's Eight Amendment medical care claim concerning his skin injuries as against defendants Seldin and Koehn. Therefore, the plaintiff's Eighth Amendment claims against them will be dismissed.

Although the parties dispute the severity of the plaintiff's skin injuries, taking the facts in the light most favorable to the plaintiff, exposure to vomit caused him significant pain.

Therefore, the court will analyze the plaintiff's claim against defendant Bohlmann as involving a serious medical need.

The undisputed facts demonstrate that defendant Bohlmann was notified of the plaintiff's vomiting at 4:30 a.m. For the purposes of this motion, the court will accept the plaintiff's inference that defendant Bohlmann was informed of the plaintiff's complaints that exposure to vomit was causing burning in his throat and on his back. See Matter of Wade, 969 F.2d at 245. At 4:30 a.m., defendant Bohlmann prescribed antacids and anti-nausea medications to provide the plaintiff with some relief.

Defendant Bohlmann determined it was medically inappropriate to release the plaintiff from restraints at that time and that continued hydration was necessary to prevent serious harm to the plaintiff. Because disagreement with medical professionals about treatment needs does not amount to deliberate indifference, Ciarpaglini, 352 F.3d at 331, the plaintiff's Eighth Amendment claim cannot be premised on defendant Bohlmann's determination that continued hydration was medically necessary.

However, the decision to disregard a known risk that results in unnecessary pain can underlie a valid Eighth Amendment medical care claim. See Reed, 178 F.3d at 852-53; Gutierrez, 111 F.3d at 1371. Because the plaintiff's complaints of burning skin were later addressed by releasing the restraints to clean his back, providing Ibuprofen, allowing him to wash with water, and providing treatment with antibiotic ointment, the plaintiff's claim is really one focused on the delay of approximately two hours between the time defendant Bohlmann was notified of the situation and determined the plaintiff should remain restrained, and the time the plaintiff was cleaned off.

Claims that a delay in medical treatment resulted in injury "must place verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment to

succeed." Langston, 100 F.3d at 1240.  In this case, the plaintiff has not presented such evidence.  Moreover, under the circumstances, the delay in treatment was not lengthy. Accordingly, defendant Bohlmann is entitled to summary judgment on the plaintiff's medical care claim.

## VII.   The Plaintiff's Remaining RLUIPA Claims

Although the court concluded that certain of the plaintiff's claims under RLUIPA were subject to dismissal, the plaintiff has asserted other RLUIPA claims.  Specifically, the plaintiff maintains that after he learned of the first court order, he expressed a willingness to eat voluntarily without being restrained.  He asserts that defendant Bohlmann's decision to continue with the intravenous hydration procedure while the plaintiff was restrained violated his rights under RLUIPA.  The plaintiff also claims that on the morning of May 4, 2002, defendant Bohlmann violated his rights under RLUIPA by electing to continue the hydration procedure while the plaintiff was restrained.  The plaintiff also maintains that defendant Seldin had the authority to stop the intravenous hydration procedure, but failed to act, thus violating his rights under RLUIPA.  He claims defendant Seldin's failure to exercise her authority to stop the continuation of the procedure violated his rights under RLUIPA.

The State defendants argue that the plaintiff cannot make a prima facie showing that his rights under RLUIPA were violated.  "RLUIPA forbids (so far as bears on this case) prisons that receive federal funding to burden a prisoner's exercise of religion substantially unless the prison both has a compelling interest and employs the least restrictive means possible for protecting that interest."  Lindell v. McCallum, 352 F.3d 1107, 1109-10 (7th Cir. 2003).  The Wisconsin prison system receives federal funding.  Id. at 1110 (citing Charles v. Verhagen, 348 F.3d 601, 606 [7th Cir. 2003]).

As relevant to this case, RLUIPA provides that "no [state or local] government shall impose a substantial burden on the religious exercise of a person residing in an institution" unless the government shows that the burden furthers "a compelling governmental interest" and does so by "the least restrictive means." 42 U.S.C. § 2000cc-1(a)(1)-(2); see also, Cutter v. Wilkinson, _____ U.S. _____, 125 S.Ct. 2113 (2005). Courts turn to cases interpreting the key terms of the Religious Freedom Restoration Act (RFRA),[4] the predecessor to RLUIPA which, like RLUIPA, required plaintiffs to demonstrate a substantial burden on their exercise of religion before defendants were called upon to show a compelling interest furthered by the least restrictive means possible. See Charles, 348 F.3d at 606; Borzych v. Frank, 340 F.Supp. 2d 955, 967 (W.D. Wis. 2004). The threshold inquiry "under RFRA is whether the statute [or conduct] in question substantially burdens a person's religious practice. If there is no substantial burden, RFRA does not apply." Crosley-El v. Berge, 896 F. Supp. 885, 887 (E. D. Wis. 1995) (quoting Morris v. Midway S. Baptist Church, 183 B. R. 239, 251 (Bankr. D. Kan. 1995)).

As used in RFRA, the term substantial burden has been interpreted to be governmental action which burdens the adherent's practice of his or her religion "by preventing him or her from engaging in conduct or having a religious experience which the faith mandates." Bryant v. Gomez, 46 F.3d 948, 949 (9th Cir. 1995); see also, Hicks v. Garner, 69 F.3d 22, 26 n.22 (5th Cir. 1995) (collecting cases defining substantial burden on religious exercise under RFRA). Security of correctional facilities and budgetary concerns have been recognized as compelling governmental interests. Id. at 1190; Luckette v. Lewis,

---

[4] Congress enacted RLUIPA after the United States Supreme Court, in City of Boerne v. Flores, 521 U.S. 507 (1997), declared RFRA unconstitutional under the Fourteenth Amendment as it applied to states and localities.

883 F. Supp. 471, 480 (D. Ariz. 1995) (stating that "two of the most compelling penological interests are budgetary concerns and safety concerns").

Some courts have considered whether RLUIPA requires that the burdened religious belief be sincerely held. As was explained in Lindell v. Casperson, 360 F. Supp. 2d 932, 951 (W.D. Wis. 2005):

> When Congress enacted [RFRA] . . . it recognized that the statute might encourage prisoners to bring "false religious claims that are actually attempts to gain special privileges or to disrupt prison life." Ochs v. Thalacker, 90 F.3d 293, 296 (8th Cir.1996); Lindell, 352 F.3d at 1110 (noting enactment of RLUIPA in wake of City of Boerne, 521 U.S. 507, which limited applicability of [RFRA]). Under [RFRA], it was important for an inmate to hold a sincere religious belief. The question is whether RLUIPA carried over that aspect of the earlier statute. Some courts believe that it did. They have incorporated the "sincerely held belief" language into RLUIPA's "substantial burden" prong. See, e.g., Grace United Methodist Church v. City of Cheyenne, 235 F. Supp. 2d 1186, 1194 (D. Wyo. 2002) (citing Wisconsin v. Yoder, 406 U.S. 205, 215-19 (1972) (under RLUIPA, substantial burden must affect *sincerely held* religious belief) (emphasis added); Guru Nanak Sikh Society of Yuba City v. County of Sutter, 326 F. Supp. 2d 1140, 1152 (E.D. Cal. 2003) (under RLUIPA, government regulation does not impose substantial burden unless it compels action or inaction with respect to *sincerely* held belief) (emphasis added); Coronel v. Paul, 316 F. Supp. 2d 868, 881 (D. Ariz. 2004) ("The question under the RLUIPA's substantial burden prong, as this Court interprets it, is whether the state has prevented [the plaintiff] from engaging in conduct both important to him and motivated by sincere religious belief.").

This court finds the court's reasoning in Lindell persuasive. Accordingly, the court concludes that, under RLUIPA, a claim must be based on a sincere religious belief. As stated by the court in Lindell:

> It makes no sense to say that a particular regulation imposes a burden of any kind, much less a substantial one, on a prisoner's exercise of his religion unless it is the prisoner's sincere beliefs that are at stake. If a prisoner is contending that he must have a plethora of apparently preposterous objects and opportunities in order to practice his religion and if his list of alleged necessities changes for no apparent reason, it is reasonable to infer that he is more interested in exercising his ability to tie up the courts and prison officials than in exercising his religion.

360 F. Supp. 2d at 951.

The State defendants contend that there is "no evidence that [the plaintiff's] fast was based on his religion." (State Defendants' Brief at 18). However, the plaintiff has averred that his fast was religiously motivated. No party directly addresses the sincerity of the plaintiff's religious beliefs. Taking the facts, including the plaintiff's averments, in the light most favorable to him for the purposes of resolving this motion, and mindful that "[courts must be cautious in attempting to separate real from fictitious religious beliefs," <u>Ochs</u>, 90 F.3d at 296 (citing <u>Thomas v. Review Bd. of Indiana Employment Sec. Div.</u>, 450 U.S. 707, 713-16 [1981]), the court will assume that the plaintiff's beliefs are sincerely held.

The court must address whether the plaintiff's religious exercise was substantially burdened. The exercise in question is the plaintiff's refusal to eat, which he avers was a religious fast. The defendants do not directly address whether their alleged conduct amounted to a substantial burden on the plaintiff's exercise of his religion. However, drawing the reasonable inferences favorable to the plaintiff, the court will assume for the purposes of this motion that by restraining, hydrating and feeding the plaintiff, defendants Seldin and Bohlmann forced the plaintiff to refrain from his religious exercise of fasting.

Thus, the court will examine whether a compelling governmental interest underpinned the alleged conduct and whether the defendants utilized the least restrictive means to further any such interest. In this case, the plaintiff was permitted to fast unimpededly for 26 days. It is undisputed that only when the plaintiff's health and well-being were in grave danger and the risk of the plaintiff's death posed a threat to the plaintiff and institutional safety, security and good order, was his religious exercise in any way burdened. A court order was secured. The scope of the order lasted only five days, permitting the plaintiff to resume his fast after his health was stabilized, which he, in fact, did. The defendants acted pursuant to defendant

Bohlmann's medical judgment in restraining and hydrating the plaintiff. These measures were stopped as soon as Dr. Bohlmann determined the plaintiff was medically stable.

The plaintiff states that he would have preferred to have been informed of the existence of a court order so that he might voluntarily have complied by eating or by "doing the procedure in a wheelchair." (Complaint at 2). However, in either event, the plaintiff's religious fast would have ended. Thus, the accommodation of the plaintiff's religious exercise would have been equal under either the course of action actually followed by the defendants or the course of action proposed by the plaintiff.

Based upon the undisputed facts, the court concludes that the defendants had a compelling governmental interest in keeping the plaintiff alive and maintaining security, safety and good order in the prison. Given the circumstances, the defendants applied the least restrictive means in furthering those ends. Thus, even if the plaintiff's exercise of sincerely held religious beliefs were substantially burdened by defendants Seldin and Bohlmann restraining, hydrating and feeding him, the plaintiff cannot prevail on his claims. See Lindell, 352 F.3d at 1109-10. Accordingly, defendants Seldin and Bohlmann will be granted summary judgment on the plaintiff's RLUIPA claims.

**VIII.   Summary of Disposition of Claims and Motions**

The plaintiff's discovery-related requests will be denied. His Fourteenth Amendment procedural due process claims against defendants DeHaan and Potter will be dismissed because the court lacks subject matter jurisdiction. The plaintiff's RLUIPA and First Amendment claims against defendants Potter and Koehn will be dismissed for lack of subject matter jurisdiction. The court lacks subject matter jurisdiction over the plaintiff's RLUIPA claim against defendant Bohlmann premised on defendant Bohlmann's participation in securing a court order permitting hydration and feeding of the plaintiff. These claims will be dismissed.

- 32 -

The State defendants' motion to dismiss will be granted in part and denied in part. The plaintiff fails to state any claims against defendant Litscher, who will be dismissed from this action. The plaintiff's Eighth Amendment claims against defendants DeHaan and Potter will be dismissed as the complaint lacks allegations of their direct personal involvement in the alleged denial of medical care. The State defendants' motion to dismiss will be denied with respect to defendant Seldin as she is alleged to have participated in the restraint of the plaintiff.

The plaintiff's Eighth Amendment claim concerning the denial of medical treatment for pain and swelling in his right hand will be dismissed because the plaintiff has not established that any of the defendants were deliberately indifferent to this medical need. His Eighth Amendment claim concerning denial of medical care for skin injuries will be dismissed as against defendants Koehn and Seldin because the plaintiff has failed to show that they participated in the alleged denial of care. The plaintiff's Eighth Amendment denial of medical care claim will be denied as against defendant Bohlmann because the undisputed facts do not demonstrate that defendant Bohlmann was deliberately indifferent to the plaintiff's serious medical needs.

The State defendants' motion for summary judgment is granted. Accordingly, the plaintiff's RLUIPA claims against defendants Seldin and Bohlmann premised on their restraint, hydration and feeding of the plaintiff are dismissed.

## CONCLUSION

**NOW, THEREFORE, IT IS ORDERED** that the plaintiff's discovery-related requests (Docket # 83) be and the same hereby are **denied**.

**IT IS FURTHER ORDERED** that defendant Litscher, Potter, DeHaan and Seldin's motion to dismiss (Docket # 81) be and the same hereby is **granted in part and denied in part** as stated herein.

**IT IS ALSO ORDERED** that defendant Litscher, Potter, DeHaan and Seldin's motion for summary judgment (Docket # 81) be and the same hereby is **granted** as stated herein.

**IT IS FURTHER ORDERED** that defendant Bohlmann and Koehn's motion for summary judgment (Docket # 64) be and the same hereby is **granted**.

**IT IS ALSO ORDERED** that the complaint and this action be and hereby are **dismissed**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly.

Dated at Milwaukee, Wisconsin, this 29th day of July, 2005.

BY THE COURT:

s/Patricia J. Gorence
PATRICIA J. GORENCE
United States Magistrate Judge